**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF T.L.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 40 WDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
97B In Adoption 2019

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF B.M.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 41 WDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
97A in Adoption 2019

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF N.V.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 42 WDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 97 In Adoption 2019

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                          **FILED MAY 15, 2020**

D.M. ("Mother") appeals from the Decrees entered by the Erie County Court of Common Pleas on December 11, 2019, involuntarily terminating her parental rights with respect to her son, N.V.S., born in December 2014, and two daughters, B.M.S., born in December 2015, and T.L.S., born in September 2018 ("Children").[1]  Because the record supports the decision of the orphan's court, we affirm the Decrees.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the orphans' court's opinion, which is supported by the certified record.  In October of 2018, after T.L.S. tested positive for cocaine and marijuana at birth, Erie County Office of Children and Youth ("OCY") obtained Orders for Emergency Protective Custody of Children.  Thereafter, OCY filed Dependency Petitions and alleged that Children were without proper care and control due to Mother's (1) past and current drug addiction; (2) unstable mental health and untreated mental illness, with diagnoses including bipolar disorder, post-traumatic stress disorder, and opiate use disorder; (3) unstable and unsafe housing; (4) an inability to safely parent Children; and (5) a failure to cooperate with OCY, including her past and current failure to communicate with OCY and to appear for random urinalysis drug testing.  Orphans' Court Opinion, 2/4/20, at 4.

---

[1] The court also involuntarily terminated the parental rights of Children's Father, C.A.S. ("Father").  Father did not appeal the Decrees terminating his parental rights, nor has he participated in this appeal.

On December 3, 2018, Mother stipulated to the allegations contained in the Dependency Petitions and the court adjudicated Children dependent.[2] The court developed a Permanent Placement Plan ("Plan") with a goal of reunification. Objectives of the Plan included requiring that Mother: refrain from the use of drugs and/or alcohol and submit to random urinalysis; participate in an updated drug and alcohol assessment and comply with all recommendations; complete a mental health assessment and follow all recommendations; secure and/or maintain safe and stable housing; obtain and/or maintain gainful employment; participate in and complete services offered to address home conditions and maintain a safe environment for Children; participate in and complete a parenting program; and cooperate with OCY. *Id.*

The court held a permanency review hearing on February 6, 2019, and determined that Mother was not in compliance with the Plan, and had not made progress toward alleviating the circumstances which necessitated placement of Children. Mother's Plan remained the same; however, adoption was added as a concurrent placement goal for Children.

The court held a second permanency review hearing on August 19, 2019, and concluded that Mother had minimally complied with the Plan and made minimal progress toward alleviating the circumstances that led to placement. The court changed Children's placement goal to adoption. Further, the court relieved OCY from offering further services to Mother and directed OCY to seek termination of Mother's parental rights.

_____

[2] OCY placed the Children in a "kinship" foster home with the same woman who was Mother's foster mother when she was a child.

On September 19, 2019, OCY filed Petitions to involuntarily terminate Mother's parental rights to Children. The court conducted a hearing on the Termination Petitions on December 10, 2019.[3] OCY presented the testimony of two caseworker supervisors, Kenneth Parmerter and Tiffany Niedzielski. Mother, represented by counsel, testified on her own behalf.

On December 11, 2019, the court entered Decrees involuntarily terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b). Thereafter, Mother filed timely Notices of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(c)(4). This Court *sua sponte* consolidated the appeals on January 14, 2020.

**ISSUES ON APPEAL**

Mother raises the following issues on appeal:

A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (5)?

B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 3.

---

[3] The court appointed Christine Konzel, Esq., to serve as legal counsel and guardian *ad litem* for Children. The court noted that there was no conflict in Children's legal and best interests. **See** Orphans' Court Opinion, 2/4/20, at 1 n.1.

**LEGAL ANALYSIS**

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the orphans' court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the court to conduct a bifurcated analysis. *See* 23

Pa.C.S. § 2511(a) and (b). Courts first focus on the conduct of the parent, and, if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). Courts particularly focus on the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. ***In re B.N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the court here found that OCY met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary

for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); **In re Adoption of S.P.**, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. **In re A.L.D.**, 797 A.2d 326, 337 (Pa. Super. 2002). This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **Id.** At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. **Id.** at 340.

Here, Mother contends that her testimony established that she participated in the services provided by OCY and "attempted" to comply with the Plan. Mother's Brief at 12-13. Mother asserts that OCY failed to present clear and convincing evidence that she has a continuing incapacity to perform parental duties pursuant to 23 Pa.C.S. § 2511(a)(2). **Id.**

In its Opinion, the court disagreed and explicitly "rejected Mother's testimony on all relevant points as inconsistent, self-serving, and at times dishonest." Orphans' Court Opinion, 2/4/20, at 10. The court did not find Mother's testimony that she was undergoing treatment for drug addiction credible and rejected her myriad excuses for failing to attend urine drug

screens. Notably, the court found it "chilling" that Mother "expressed no appreciation for the effects of her behavior on the Children. She showed no insight into the nature and extent of her drug addiction or the problems it has caused for the Children." *Id.*

Conversely, the court accepted Mr. Parmerter's and Ms. Niedzielski's accounts of Mother's and Children's involvement with OCY and the kinship parent as truthful and accurate. Mr. Parmerter credibly testified regarding, *inter alia*, his contact with Mother and Children, the services offered to Mother, and Mother's failure to complete or participate fully in those services. Specifically, Mr. Parmerter recounted that OCY was unable to implement the court-ordered home program because Mother did not allow OCY to inspect her home. *Id.* Mr. Parmerter also explained that Mother was inconsistent in maintaining contact with OCY. *Id.* Notably, Mother failed to appear for over 100 court-ordered urinalysis drug screenings, and tested positive for marijuana, Suboxone, methamphetamine, and/or cocaine on the few occasions she was tested. *Id.* Due to Mother's non-compliance with random urinalysis, she was not permitted to visit with Children. Although Mother did submit to drug and mental health evaluations, she avoided entering into any Plan-sanctioned treatment programs. *Id.* at 4. Mr. Parmerter testified in favor of terminating Mother's parental rights because the Children are placed together in a kinship home and are doing well. *Id.* at 6.

The court concluded that Children lacked essential parental care for fourteen months at the time of the termination hearing, and that Mother's long-standing drug addiction was the source of her repeated and continued

parental incapacity. ***Id.*** The court further determined that Mother could not remedy her incapacity. ***Id.***

Having reviewed the record, we conclude that it supports the findings of the court that Mother has not provided Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We also conclude that, pursuant to Section 2511(b), the court properly determined that termination of Mother's parental rights would be in the best interests of Children. With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. ***See In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***Id.***

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. ***Id.*** The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. ***See In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. ***In re Z.P.***, ***supra*** at 1121.

Mother argues that OCY failed to present clear and convincing evidence that termination of her parental rights would be in the best interest of Children. Mother's Brief at 15. In terminating Mother's parental rights, however, the court considered the bond between Mother and Children, and found little to no evidence that severing the bond between Mother and Children would have any detrimental effect on Children. Orphans' Court Opinion, 2/4/20, at 13. The court observed that, due to the young age of Children at the time of separation, and the lapse of over twelve months since they have had any contact with Mother, "it is unlikely any bond between Mother and Children persists." *Id.* The court credited the testimony of Ms. Niedzielski, who described the strong bond Children share with their kinship placement who they call "grandma." *Id.* at 6. The court further credited the testimony of Ms. Niedzielski that, due to Children's young ages when they were removed from Mother's care, and given that they have not seen Mother for over a year, "Children seek and receive parental nurturing from the adoptive resource parent." *Id.* The court explicitly concluded that, "even if the court were to find an ongoing bond, it would be in the best interests of the Children to sever that bond for the sake of achieving safety, consistency, and permanency for the Children." *Id.*

Our review of the record supports the orphans' court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Mother's parental rights is in the best interests of Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2020